Wright, J.,
delivered the opinion of the Court.
The question in this case, is as to the liability of the plaintiff in error, on a contract made by his wife. Mrs. Catron has a separate estate settled upon her, but the writing, or instrument under which she derives title, was not read in evidence, and the exact nature of the estate, or the power conferred upon her in regard to it, does not appear. Oral evidence of the existence of such an estate was received without objection, and the fact is conceded in argument, on both sides. On the 24th of January, 1853, at Nashville, where- she and her husband resided, and during his absence at Washington, she, in her own name, entered into a contract in writing, with the defendants in error, mechanics of Nashville, to furnish the materials and erect for her, a cottage, in the village of Tulla- *360 liorna, to be used as a Summer residence, at a stipulated price; and to be completed by the first day of June next, thereafter, according to a style and plan designated. She also, in like manner, but without writing or stipulated price, engaged them to furnish the materials and erect a kitchen and servants’ room. Soon after the making of these contracts, namely : On the 15th of March, 1853, she purchased, with funds derived from her separate estate, a lot in said village, and took the deed in the name of her trustee, and had the same duly registered, in which the lot was secured to her sole and separate use, free from the control of her husband, or liability on account of his debt, during her natural life, with power in her to sell and convey the same upon a written direction to ber trustee to that effect, or to devise the same by Will and testament as a feme sole. Upon the lot so purchased, the buildings were erected by the defendants in error, under the direction of Mrs. Catron, and she and her husband took possession of them on the 4th of July, 1853, and, during the Summer months, have resided there ever since. Judge Catron having, also, since the completion of these buildings, caused additional rooms to be made with his own means. Judge Catron was not a party to the contract so made by his wife with the defendants in error; and seems, at the time, to have been ignorant of her purpose to have the buildings erected. It is proved by a witness, who resided in the family, that she was present at some of the interviews between Mrs. Catron and the defendant in error, Moore, when the contracts were being negotiated, and she heard Mrs. Catron tell Moore that she was building the houses out of her own funds, without Judge Catron’s knowledge or consent; that she *361 wanted to surprise him on his return home; that he was then at Washington, holding Court. There is some conflict in the proof, as to whether Judge Catron was at Tullahoma until after the defendants in error had completed the buildings for Mrs. Catron, and also, whether the cottage, allowing for alterations, was constructed according to the contract. The witnesses also differed as to the value of the other work. As the buildings advanced, Mrs. Catron made the defendants in error sundry payments ; the checks and receipts being exclusively in her own name, and all the transactions in regard to these buildings, from first to last, until their completion, being with her, and not her husband, she being considered as the owner; and the evidence, to say the least of it, tends strongly to show that the contracts were made and work performed upon the credit of Mrs. Catron, and under the expectation that she was to pay for it. The defendants in error claiming that there was still a balance due them, after applying Mrs. Catron’s payments, on the llltli of October, 1857, instituted suit for the recovery of the same against her and Judge Catron, and obtained judgment against the latter; to reverse which he applies to this Court. It appears that in November, 1857, after the commencement of the suit, Warren and Judge Catron, accompanied by Coleman and Hughes, mechanics of Nashville, with a view to a settlement of the matter, went to Tullahoma, for the purpose of measuring the work and ascertaining what was due, and that Coleman and Hughes did measure and estimate the work by the written contract, which Judge Catron had along, he pointing out the work to be measured, and stating that it ought to have been paid for long ago; and that he could not pay. *362 more than the contract price for contract work, and for the other work in proportion. Coleman went at the request of Warren and Hughes, at the request of Jpdge Catron, who stated to him that Mrs. Catron had contracted for the work, and he wanted them to go up and measure it. The result exceeded what Judge Catron regarded as right, and he refused to have anything more to do with the matter.
In disposing of this case, we shall lay out of view, the doctrine upon the subject of necessaries furnished the wife, (save only so far as the same may be incidentally touched,) as inapplicable to these contracts. In general — and it was so in this case — a married woman has no power of entering into any description of contract during the cover-ture on her own account, so as to incur any legal liability thereon, although she is entitled to sue, together with the husband, upon covenants or other engagements, that may have been entered into with her. But the husband will be held liable upon her contracts, provided he appears to have expressly, or impliedly sanctioned what she has done, she being treated as his agent in making the contract. Even in the case of a deed entered into by the wife in her own name, of the one part, and the plaintiff of the other part, the covenants therein entered into by the wife, cannot be enforced either against her or her husband, (she not being bound, and having no power to bind him, without a power of attorney,) although the covenant that may be entered into with her by the other party to the deed, may be enforced as against him, in a joint action by the husband and wife. But in order that the party who has entered into this anomalous and one-sided engagement, rendering himself liable to be sued *363 by the husband and,wife, but giving him no remedy against them or either of them, may not have all the burden of the performance of it without any of the corresponding benefits, the law gives him a right to sue the husband upon a quantum meruit, for a reasonable compensation for anything done under the deed, just the same as if it had never been made. If for example, he has performed work or labor, or rendered services, or supplied goods, upon the faith of a covenant for payment or remuneration therein contained, he is entitled to sue the husband for the fair value of the work and services, and of the goods supplied, just as if the covenant had never been in existence. But then, the husband must have expressly, or impliedly sanctioned what she has done, for which purpose no power of attorney is requisite any more than in the case of a simple contract. And the jury must consider all the facts and circumstances attending the transaction, whether the engagement be with or without writing, to ascertain if this sanction has been given. If no authority from the husband can be shown, the contract does not bind him; and it cannot be enforced, as we have already seen, against the wife, by reason of the coverture, and her inability to contract on her own account, during the continuance of the marriage. If the things furnished, or the work done for the wife, be not what are termed necessaries, the presumption of law is, that the husband did not authorize or assent to her contract, and in an action for the price the plaintiff will bJ obliged to prove affirmatively, that the debt was tracted on the express or implied authority of band. It is, however, the office of the Jury from the facts of each case, whether they *364 assent by the husband to the contract of the wife. And it will be very material to consider, whether the things furnished, or labor performed, came to the use of the husband, or was enjoyed by him. If the wife purchase goods, or order work to be done, and the husband, by any act, precedent or subsequent, ratifies the contract by his assent, the husband shall be liable upon it, whether the goods or work are for himself, his children, or for his family. If the goods or work, although they have not come to the hands of the husband, or to his use, are known by him to have been ordered by the wife, and the husband has made no objection to her use and enjoyment of them, or given the parties who supply, or labor for her, any intimation of his disapproval, he will be deemed to have adopted and sanctioned the wife’s expenditure, unless it appears that she has a separate income at her own disposal, to be expended by her free from the control of the husband. It is held to be the duty of the husband, when he sees his wife indulging immoderately, in expensive tastes, and knows she has no separate income of her own to spend in luxuries and superfluities, to give notice to those who_ supply her, or labor for her, that the outlay does not meet his sanction, and that he does not intend to pay for the goods or work ordered by her. And if he chooses to lie by and permit the goods to be delivered, or work done, without such notice and warning, ho will be presumed to have given t subsequent sanction and ratification of her acts, which ¡jjñvalent in all cases to a precedent authority. But marriage settlement, or otherwise, a separate in-been settled upon .the wife, to be received and yjy her, free from the control of her husband, *365 the mere circumstance .of the husband being aware of the wife’s possession and use of the things or fruits of the labor, will not fix him with a subsequent adoption and ratification of the wife’s contract, even if he express no disapprobation, (since he may fairly suppose them to be .purchased out of her own funds,) unless it be clearly shown that he knew that she was persevering in a course of extravagance far beyond the separate means at her own disposal, and, knowing this, that he gave no warning and made no attempt to check the outlay. If, however, a party deals exclusively with the wife, if he never sees the husband, or has any communication with him, respecting the supply of the articles or labor to the wife, it will be left as a question for the jury to determine, whether the articles were not supplied, or labor performed on the credit of the wife, or of the funds of which she was actually or presumptively possessed, and whether the plaintiff did not deal with her on her own account upon the expectation that she would be the paymaster, relying either upon her honor and good faith, or upon a Court of Chancery, to apply whatever separate means she might have at her disposal in liquidation of her debts, and not on the credit of the husband, and with the intention of looking to him for the price of the articles or labor. If the credit be given solely to the wife, the husband is not liable, although they live together, and although he sees her in the possession and enjoyment of the goods bought, or fruits of the work done; nor need he prove that the goods or labor were not necessaries. The question whether the credit were given to the wife, is, however, generally a question of fact for the jury ; and if the credit is once given to her, the husband will not be liable, al- *366 tliougb the wife lives with him, and he sees her in the enjoyment and use of the articles, or fruits of the labor, without objection; for the law does not allow a person who has once given credit to A, knowing all the facts, afterwards to shift his claim, and charge B. In sucb a case, the husband can only become liable by some distinct and" independent contract of his own in regard to the debt, founded upon a new and proper consideration. In support of the foregoing principles, we refer, to the following authorities: Addison on Contracts, 695 to 701; Story on Contracts, Sec. 99 to 103; 1 Parsons on Contracts, 288, 289, (top) and note e.; Metcaffe vs. Shaw, 3 Camp., 22; Bentley vs. Griffin, 5 Taunt, 356; Leggatt vs. Reed, 1 C. & P. 16; and Taylor vs. Britton, reported in the note to the last named case; Stammers vs. Macomb, 2 Wend., 454; Moses vs. Magartie, 2 Hill, So. Car., 335; Sheldon vs. Pendleton, 18 Conn., 417; and especially, Stammers vs. Macomb, and Taylor vs. Britton.
Now, in view of these principles, as applicable to the facts of this ease, we think the instructions of his Honor, the Circuit Judge, to the jun, are erroneous, because ho entirely overthrows the distinction between engagements made on the credit of the husband, and with the intention of looking to him for their performance, treating the wife as his agent, and contracts made with the wife, solely on her credit, or that of her separate estate, and with no intention of holding the husband bound. That we do not misapprehend the charge in this respect, we think, is sufficiently apparent from the body of it, but rendered more certain by the instructions asked by the counsel of the plaintiff in error, and refused by the Court.
*367 The jury were further instructed, that if Judge Catron, promised the plaintiffs, if they would cause the work to be measured and valued by Hughes and Coleman, he would pay for it, and in consideration of that promise, they did cause it to be measured and valued by these men; such promise, though not in writing, and though made after the commencement of the suit, would operate as an adoption of the contract of Mrs. Catron from the beginning, and would maintain the present action.
This instruction we also think emoneous, not because such a promise, when sought to be directly enforced by a distinct suit under pleadings properly adapted to it, could not, perhaps, be maintained and executed, but because the only use that could be made of it in the present suit, was, as evidence tending' to show original authority from Judge Catron to his wife, to bind him in these contracts. Such a promise could not, per se, operate retrospectively, in any other way, so as to effect this action; but to be available, (there being no anterior liability on the part of the plaintiff in error,) must be the subject of a distinct suit, accompanied with proper averments. The effect given to it in this action by the Circuit Judge was entirely too great. It should have been left as proof\ for the consideration of the jury, to shed light upon the nature of the original dealings between Mrs. Catron and the defendant in error.
We have already intimated that such a promise as the one supposed in the charge of his Honor might be •valid. It is laid down, in Story on Contracts, sec. 431, that a promise to pay the bond of a third person, if the obligee will go before a magistrate, and make oath that it was rightly read to the obligor before he executed it, *368 is binding; because the travail of coming’ before the Mayor is a very good consideration. So, also, a promise to pay a certain sum of money, on condition that the plaintiff call for it at a particular time, is binding; because the condition is an inconvenience to the plaintiff. To the same effect is Brooks vs. Ball, 18 Johns. Rep., 338.
Then, as to the sufficiency of the consideration for such a promise, there can be no doubt; and the only question that can arise is, whether such a promise is to be in writing, under the Statute of frauds; and this we need not, and do not, now consider, as the action here is not based on this promise. From what is said in Brooks vs. Ball, it would seem, if this were the debt of a third person, not that of the wife, the promise must be in writing. But here there is no liability on the part of the wife, because of her coverture when the contracts were made; and this is so, even if the credit was solely given to the wife, and we do not see how the promise of the husband, in such a case, is to be regarded as a collateral engagement. In the case of an infant, not liable by reason of his minority, it has been held that the undertaking, or promise, of another for him, is not a collateral, but an original engagement: Harris vs. Huntbach, 1 Burrow, 371; Addison on Contracts, 103. And if the wife were liable, or this was the debt of a third party, it is difficult to see, (notwithstanding what is said in Brooks vs. Ball.) how the promise is within the terms of the Statute. The mere fact, that the promise to pay a debt from a third party, does not create an original liability, since it is perfectly competent to a man to assume, on sufficient consideration; to pay the *369 debt of another. Thus, a promise by A to B to pay a debt due from B to C is not a promise to pay the debt of another, within the Statute of frauds; and an unconditional primary liability may be assumed directly to the creditor: Story on Contracts, see. 861. But, as already stated, we do not finally dispose of this question.
Whether Judge Catron made' such a promise or contract, and intended thereby to create upon himself, a liability which did not before exist; or whether, on the admeasurement of this work, and the attempt to have what was due upon it, settled, he acted merely as the agent of his wife, or for himself, as the party originally liable, are questions to be decided upon the circumstances of the case, and is matter of evidence.
The judgment of the Circuit Court must be reversed,- and a new trial had, when the jury will be instructed to consider of the case upon the principles of this opinion.